1  DANIEL BOGDEN
   United States Attorney
2  KIMBERLY M. FRAYN
   ANDREW W. DUNCAN
3  Assistant United States Attorneys
   333 Las Vegas Blvd. South, Suite 5000
4  Las Vegas, Nevada 89101
   Tele: (702) 388-6336
5  Fax: (702) 388-6020

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 2:12-cr-00004-JCM-GWF |
| Plaintiff, ) | |
| ) | **UNITED STATES' MOTION** |
| v. ) | **FOR ALTERNATIVE VICTIM** |
| ) | **NOTIFICATION PROCEDURES** |
| **DEFENDANT [1],** *et al.*, ) | |
| ) | |
| Defendants. ) | |

COMES NOW THE UNITED STATES OF AMERICA, by and through its undersigned attorneys, and respectfully moves this Court for authorization to employ alternate victim notification procedures pursuant to Title 18, United States Code, Section 3771(d)(2). More particularly, the victims in this case number, along with the companion cases 2:12-CR-00083-KJD-GWF and 2:12-CR-00084-JCM-GWF, number in the millions making it impracticable to accord each victim individual notice and other rights described in subsection 3771(a). The UNITED STATES therefore requests authorization to notify the victims by internet publication in a manner described below.

## I. INTRODUCTION

During the last four (4) years, United States law enforcement authorities have been conducting an investigation of the Carder.su organization, a highly sophisticated international cybercrime enterprise. The investigation has shown that the Carder.su organization engages in large scale trafficking of compromised credit card account data and counterfeit instruments, such as counterfeit identification documents and counterfeit credit cards, as well as money laundering and various types of computer crimes, including intrusion and hacking.

Since on or about November 22, 2005, the Carder.su organization, including its leadership, members, and associates, have constituted a Racketeering "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity. The enterprise is an ongoing criminal organization whose members function as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Carder.su organization's members engage in acts of identity theft and financial fraud, including, but not limited to, acts involving trafficking in stolen means of identification; trafficking in, production and use of counterfeit identification documents; identity theft; trafficking in, production and use of unauthorized and counterfeit access devices; and bank fraud;  and whose members interfere with interstate and foreign commerce through acts of identity theft and financial

fraud. Members and associates of the Carder.su organization operate principally in Las Vegas, Nevada, and elsewhere.

The Carder.su organization operates a "virtual clubhouse," located at an internet web portal called a forum. This forum is where the worldwide membership congregates to purchase illicitly obtained data, share knowledge and Modus Operandi of various fraud schemes in an effort to further the criminal enterprise, and conspires to maximize the amount of illegal proceeds obtained. Membership in the organization is not available to the general public. Instead, a second forum has also been created to act as a feeder mechanism to vet incoming new members to the organization. The Carder.su organization's forum operates solely for its membership's unlawful purposes. The forum itself is operated in attempted secrecy through the use of numerous security features, such as an in-depth review process to gain membership, multiple vetted member sponsorship, and increased password security. Within the organization, experienced and vetted members collaborate and share services to support the illegal criminal hackers engaging in computer intrusion, identify theft, access device fraud, and other fraud activities. As of March 7, 2012, the Carder.su organization boasted a membership of seven thousand eight hundred and eighty (7,880).

During the course of the investigation, law enforcement agents have determined that millions of individual persons, as well as a myriad of financial institutions, which are located in both the

3

United States and overseas, have been victims of the Carder.su organization's criminal activities.  For example, access device fraud is one of the common offenses routinely perpetrated by members of the Carder.su organization. In the spring of 2011, law enforcement agents accessed a website, which they knew had been established by Defendant [14], a member of the Carder.su organization, for the sole purpose of selling stolen and otherwise compromised credit card account data in furtherance of the criminal enterprise. Defendant [14] advertised on the organization's forum that the member was a vendor, who sold compromised credit cards, and further provided a website address in his advertisement where other members could purchase the compromised account information. When law enforcement agents logged in and browsed Defendant [14]'s web site, they were able to select one hundred (100) compromised credit card account numbers and add it to the website's shopping cart.  Law enforcement agents then transferred approximately seven hundred dollars ($700) to Defendant [14]. When the money transfer was completed, the agents were then able to download the compromised credit card data which they had purchased.

Moreover, while law enforcement agents were monitoring this same website, Defendant [14] updated his advertisement on the organization's forum to reflect that he was offering one million (1,000,000) stolen credit card accounts for sale. Analysis of subsequent sales conducted from Defendant [14]'s site from April 12, 2011, to April 22, 2011, showed the sale of fifty four thousand

nine hundred seventy four (54,974)of those stolen credit card account numbers, with each individual account number being sold for approximately twenty dollars ($20).  Accordingly, the Carder.su organization profited in excess of one million dollars ($1,000,000) during that ten day period from victimizing thousands of individual account holders, as well as the numerous financial institutions which issued their credit card accounts.

A second illustration showing the voluminous number of victims in this case can be found through law enforcement's April 2011 forensic analysis of the recovered images from computer servers under the control Defendant [19]. This analysis revealed the presence of approximately sixty three thousand nine hundred and one (63,901) compromised credit card account numbers.  Law enforcement agents initially forwarded the list of compromised account numbers to Chase, Discover, and American Express to determine whether these three financial institutions had sustained any dollar loss associated with fraudulent use of these compromised accounts.

Chase advised that approximately six thousand five hundred twenty seven (6,527) of the accounts were issued by Chase. Chase stated they had suffered a dollar loss of approximately seven hundred eighty five thousand seven hundred twenty two dollars ($785,722)arising from fraud on those accounts. Discover advised that approximately two thousand seven hundred ninety four (2,794) of the accounts had been issued by them.  Discover stated that they had suffered a dollar loss of approximately five hundred forty nine

thousand six hundred seventy two dollars ($549,672) from fraud on those accounts. American Express advised that a total of three thousand four hundred twenty four (3,424) accounts had been issued by them. American Express stated that they had suffered a dollar loss of approximately seven hundred twenty eight thousand six hundred eighty dollars ($728,680) arising from fraud on the accounts.

Based on the information provided by Chase, Discover and American Express, even though their accounts only comprise twelve thousand seven hundred forty five (12,745) of the sixty three thousand nine hundred and one (63,901) total accounts, the dollar loss sustained just among those three financial institutions is more than two Million dollars. Law enforcement continues to work to identify additional victims, that is, to ascertain which financial institutions issued the remainder of the sixty three thousand nine hundred and one (63,901) accounts.

Finally, to close the loop, members of the Carder.su organization who purchased stolen credit card information from their co-defendants also trafficked in, manufactured, and used false identity documents to assume the victim account holders' identities. Using these false identifications, usually counterfeit drivers' licenses and other counterfeit secondary means of identification, Carder.su members used the stolen credit card account information to unlawfully obtain merchandise, goods, services, and money for their own personal financial gain and to

benefit the Carder.su organization. The financial loss associated with fraudulent activities perpetrated by Carder.su members for each of those credit card accounts would have been limited only by the available account balance limits set by the victim financial institutions that issued the cards. Even if those limits were set at a low amount per credit card account, i.e., two hundred dollars ($200), the loss to the victims - and the financial gain to the criminal enterprise, could have easily been more than twenty million dollars ($20,000,000).

Given vastness of the Carder.su organization, the pattern of prolific criminal activity committed by its international membership in furtherance of the enterprise, and the fact that the organization has been engaging in these offenses since on or about November 22, 2005, the government submits that the victims in this case, along with the companion cases 2:12-CR-00083-KJD-GWF and 2:12-CR-00084-JCM-GWF, number in the millions thereby making it impracticable to accord each victim individual notice and other rights described in subsection 3771(a). Accordingly, the government seeks permission to engage in the alternative victim notification procedures discussed below.

## II. VICTIM NOTIFICATION REQUIREMENTS

On October 30, 2004, the President signed into law the Justice for All Act of 2004. Title I of the Act enumerates specific rights of crime victims in federal criminal cases, codified at 18U.S.C. § 3771(a). These include "[t]he right to reasonable, accurate, and

7

timely notice of any public court proceeding ... involving the crime or of any release or escape of the accused," and "[t]he right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." 18 U.S.C. §3771(a)(2),(a)(4).

The Act requires "[o]fficers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation and prosecution of crime [to] make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection[3771](a)," 18 U.S.C. § 3771(c)(1), and it instructs the Court to "ensure that the crime victim is afforded" those rights. 18 U.S.C. § 3771(b). A "crime victim" under the Act is defined as "a person directly and proximately harmed" as a result of the commission of a Federal offense. 18U.S.C. § 3771(e).

In routine cases involving a single or limited number of victims, the victim notification burdens imposed by the Act upon the government will be substantial. In other cases, involving tens, hundreds, or even thousands of potential victims, the burdens imposed by the Act would be simply overwhelming. In recognition of this, the Act grants the Court authority to fashion alternative notification procedures when the Court finds that implementation of the prescribed requirements would be impracticable. The Act provides:

> In a case where the court finds that the

>    number of crime victims makes it
>    impracticable to accord all of the crime
>    victims the rights described in subsection
>    [3771](a), the court shall fashion a
>    reasonable procedure to give effect to
>    this chapter that does not unduly
>    complicate or prolong the proceedings.

18 U.S.C. § 3771(d)(2). The Act places no limitations on the alternative procedures which a Court may fashion other than that the procedures be reasonable to effectuate the Act and that they not unduly complicate or prolong the proceedings. *Id*. In this case, on or about January 10, 2012, thirty nine (39) members of the Carder.su organization were indicted in case number 02:12-CR-004-JCM-GWF, for violation of Title 18, United States Code, Sections 1962- Racketeering (RICO) and RICO Conspiracy, 1028- Fraud in Connection with Identification Documents and 1029 - Fraud in Connection with Access Devices.  On March 13, 2012, four (4) additional members and seven (7) associate members of the Carder.su organization were indicted in case numbers 02:12-CR-083-KJD-GWF and 02:12-CR-084-JCM-GWF for violation of Title 18, United States Code, Sections 371-Conspiracy, 1028 - Fraud in Connection with Identification Documents, and 1029 - Fraud in Connection with Access Devices. These individuals span all levels of the Carder.su organization including the uppermost leadership. The offenses described in these three Indictments arose out of a sophisticated and massive criminal organization whose members engage in acts of identity theft and financial fraud, including, but not limited to,

acts involving trafficking in stolen means of identification; trafficking in, production and use of counterfeit identification documents; identity theft; trafficking in, production and use of unauthorized and counterfeit access devices; and bank fraud in furtherance of the criminal enterprise. As described above, the number of persons whose personal and financial identifiers were compromised in this case—each a potential victim—along with the myriad of financial institutions, nationally and internationally, which have sustained financial loss arising from the organization's criminal conduct, makes individualized communication with and notification of each victim impracticable.

Neither the government nor the Court has the resources to accord each of the victims in this case the rights prescribed in subsection 3771(a) on an individual basis.

**III. UNITED STATES' PROPOSED ALTERNATIVE NOTIFICATION PROCEDURES**

The scope and size of this criminal enterprise is, in many respects, a testament to modern communications and—in particular—the world wide web. Also, law enforcement agents have determined that the internet is the method of preferred communication among the fraud investigators employed by the victim financial institutions. Accordingly, the UNITED STATES requests authorization from the Court to communicate with and provide notification to the pool of potential victims through this medium. More specifically, the International Association of Financial Crime Investigators (IAFCI)has agreed to cooperate in this matter by

10

posting, for a period of at least three months from the date of the Court's order, on IAFCI's own website a notice providing victims information and links to the U.S. Attorney's Office public website. In additional, the primary investigative agencies, the United States Secret Service (USSS) and Homeland Security Investigations (HSI), have each agreed to place a similar notice on their agencies' public websites providing similar information. In turn, the UNITED STATES proposes on the U.S. Attorney's Office public website to post for the duration of each of the three companion cases, 2:12-CR-004; 2:12-CR-083; and 2:12-CR-084; the Indictments and significant pleadings, forms for communication and conferral, and notice of events and hearings. The proposed notice will provide the following information regarding this case:

   1. The names of the defendants, the case number and charges;
   2. All of the victim rights codified at 18 U.S.C. § 3771(a);
   3. The identity of the prosecutors;
   4. The identity and contact telephone numbers of Victim Witness Coordinator;

In addition, the UNITED STATES proposes to post a web-based victim impact questionnaire. This questionnaire will allow for the orderly collection of certain victim information, help authenticate those who are actual victims and give the millions of victims an opportunity to describe their plight to government attorneys.

### IV. CONCLUSION

The number of potential victims in this case renders

11

individual notification to each impracticable. In such cases, the Justice for All Act authorizes the Court to fashion a reasonable alternate notification procedure to effect the aims of the Act without unduly complicating or prolonging the proceedings. The government's proposed notification procedures accomplish these goals. For the reasons set forth above, the government respectfully requests that this Court grant this motion and sign the accompanying proposed Order.

**RESPECTFULLY SUBMITTED** this 13TH day of APRIL 2012.

```
                                    DANIEL BOGDEN
                                    United States Attorney
                                    /s/
                                    Kimberly M. Frayn
                                    Andrew Duncan
                                    Assistant United States Attorneys
                                    District of Nevada
                                    333 Las Vegas Blvd. S, Ste 5000
                                    Las Vegas, Nevada 89101
```

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,  )  )  Plaintiff,  )  )  v.  )  )  **DEFENDANT [1]**, *et al*.,  )  )  Defendants.  ) | 2:12-cr-00004-JCM-GWF  **O R D E R** |

Before the Court is the government's motion for permission to engage in alternative victim notification procedures. The Court, having reviewed the motion and found good cause for proceeding under alternative notification procedures, opines as follows:

**IT IS THEREFORE ORDERED** that the government's motion is **GRANTED.** The UNITED STATES shall communicate with and provide notification to the pool of potential victims through the internet.

**It IS FURTHER ORDERED** that for a period of not less than three (3) months, the International Association of Financial Crime Investigators (IAFCI) shall post on IAFCI's own website a notice providing victims with information and links to the U.S. Attorney's Office public website.

**IT IS FURTHER ORDERED** that, for a period of not less than

three (3) months, the United States Secret Service (USSS) and Homeland Security Investigations (HSI) shall each place a similar notice on their agencies' public websites providing victims with information and links to the U.S. Attorney's Office public website.

**IT IS FURTHER ORDERED** that for each of the three companion cases, 2:12-CR-004; 2:12-CR-083; and 2:12-CR-084; the UNITED STATES shall post on the U.S. Attorney's Office public website the Indictments and significant pleadings in each case, forms for communication and conferral, and notice of events and hearings. The notice shall provide the following information regarding this case:

1. The names of the defendants, the case number and charges;

2. All of the victim rights codified at 18 U.S.C. § 3771(a);

3. The identity of the prosecutors;

4. The identity and contact telephone numbers of Victim Witness Coordinator; and

5. A web-based victim impact questionnaire. This questionnaire will allow for the orderly collection of certain victim information, help authenticate those who are actual victims and give the millions of victims an opportunity to describe their plight to government attorneys.

Dated this \_\_16th\_\_ day of April 2012.

_____
Honorable Magistrate Judge George W. Foley Jr.

CERTIFICATE OF SERVICE

I, Kimberly M. Frayn, hereby certify that I am an employee of the Organized Crime Strike Force, United States Department of Justice, and that on this day I served, by way of the internet via email and by facsimile, a copy of the following:

**UNITED STATES' MOTION FOR
ALTERNATIVE VICTIM NOTIFICATION PROCEDURES**

upon the defense counsel.

DATED: APRIL 13th, 2012         ____/s/_____
                                KIMBERLY M. FRAYN

15