UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| UNITED STATES OF AMERICA, | Case No. 2:12-cr-00004-MMD-GWF |
|---|---|
| Plaintiff, | |
| v. | ORDER |
| QASIR MUKHTAR, et al., | (Def.'s Appeal From the Magistrate Judge's Detention Order – dkt. no. 202) |
| Defendants. | |

Before the Court is Defendant Qasir Mukhtar's Appeal From the Magistrate Judge's Detention Order ("Appeal"). (Dkt. no. 202.) For reasons discussed below, the Magistrate Judge's Order Denying Defendant's Motion for Pretrial Release is affirmed.

**I.     BACKGROUND**

Because the Order Denying Defendant's Motion for Pretrial Release (dkt. no. 184) contains a detailed account of the facts in this case, this Order only briefly recounts the pertinent facts.

Defendant Qasir Mukhtar is charged in a multi-count, multi-defendant criminal indictment. The indictment alleges that Mukhtar was a member of an international criminal organization called Carder.su. Carder.su traffics and produces counterfeit identification documents and unauthorized access devices via the Internet. The Indictment alleges that Mukhtar was a "vendor" at Carder.su. Vendors in the organization advertise and sell products, services, and other contraband to members of Carder.su. Mukhtar is charged with possession of fifteen or more counterfeit and

unauthorized access devices, conspiracy to possess and possession of illegal device-making equipment.

Mukhtar immigrated to the United States from Pakistan in 1999. He was fifteen and came on a visa. His visa since expired and he currently resides here illegally. Both of his parents and five of his six siblings currently reside in Pakistan. Mukhtar is married to Sadia Mehjabeen. The two have been together for approximately five years.[1] Ms. Mehjabeen is a United States citizen. Before Mr. Mukhtar's arrest, he and Ms. Mehjabeen lived in New York.

Mr. Mukhtar made his initial appearance before a magistrate judge in the Eastern District of New York on March 15, 2012. He was temporarily detained and a detention hearing was set for March 21, 2012. Following that hearing, the magistrate ordered Mukhtar detained and transferred to the District of Nevada for further proceedings. Mukhtar's initial appearance, arraignment, and plea took place on April 9, 2012. At the hearing Mr. Mukhtar's then-attorney stated that he had been informed that Immigration and Custom Enforcement ("ICE") had lodged a detainer against Defendant and Mr. Mukhtar would therefore "submit" on the issue of pretrial detention.[2] Counsel for the government agreed and argued that Mr. Mukhtar should be detained for several reasons, including but not limited to the ICE detainer.

Defendant pled not guilty. Pursuant to the Complex Case Scheduling Order (dkt. no. 147) entered on April 24, 2012, trial in this case is presently scheduled for February 26, 2013.

On July 1, 2012, Defendant filed a motion for pretrial release. (Dkt. no. 173.) His Motion was based in part on a June 15, 2012, Memorandum issued by Janet Napolitano, the Secretary of Homeland Security, at the direction of the President. The Memo outlined

---

[1] This is based on Mr. Mukhtar's interview with Services in the Eastern District of New York. His wife's declaration explained that the couple met in 2004.

[2] At the time Mr. Mukhtar was represented by government-appointed counsel. He has since retained private counsel.

1   how the Department of Homeland Security ("DHS") should enforce immigration laws
2   against certain young people who were brought to the United States as children and
3   know only this country as their home. The Memo (hereinafter "DHS Memo") calls for the
4   exercise of prosecutorial discretion in regard to such persons, meaning that removal
5   proceedings should not be commenced against them on the grounds that they are
6   unlawfully present in the United States. The DHS Memo sets forth certain criteria that
7   should be satisfied before an individual can be considered for the exercise of
8   prosecutorial discretion:

- The individual came to the United States under the age of sixteen;
- The individual has continuously resided in the United States for five years preceding June 15, 2012;
- The individual is currently in school, has graduated from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or United States armed forces;
- The individual has not been convicted of a felony offense, a significant misdemeanor, multiple misdemeanor offenses, or otherwise poses a threat to national security or public safety; and
- Is not above the age of thirty.

17  The Magistrate Judge determined that the DHS Memo was new information not
18  available at the time of the detention hearing on April 9, 2012. The Magistrate Judge
19  further assumed without deciding that Mr. Mukhtar satisfies the criteria for the exercise of
20  prosecutorial discretion as set forth in the DHS Memo. The Magistrate Judge accordingly
21  determined that the ICE detainer was "not as significant a factor in favor of detention as
22  it was at the time of the hearing on April 9, 2012." (Dkt. no. 184 at 7.) However, the
23  Magistrate Judge denied Defendant's Motion for Pretrial release because the
24  government offered several other reasons why Mr. Mukhtar was a flight risk. (*Id.*)

25  **III.    DISCUSSION**
26      **A.    Legal Standard**
27  The Court reviews the Magistrate Judge's Order under 18 U.S.C. § 3142(e) de
28  novo. *United States v. Eischeid*, 315 F. Supp. 2d 1033, 1035 (D. Ariz. 2003) (citing

*United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir.1990)). "The Court must 'review the evidence before the magistrate' and any additional evidence submitted by the parties, 'and make its own independent determination whether the magistrate's findings are correct, with no deference.'" *Id.* (quoting *Koenig*, 912 F.2d at 1193).

### B. Reopening the Detention Hearing

The Bail Reform Act of 1984 "requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." *United States v. Gerbo*, 948 F.2d 1118, 1121 (9th Cir. 1991). "Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in [the] defendant's favor." *Id.* (citations omitted). The government bears the burden of proving by a preponderance of the evidence that the defendant poses a flight risk. *See id.*

The Bail Reform Act, 18 U.S.C. § 3142(f)(2), provides that a detention hearing may be reopened "before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

18 U.S.C. § 3142(g) requires the Court to consider four factors in determining whether to detain or release a defendant: "(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community should the person be released." *United States v. Chen*, 820 F. Supp. 1205, 1207 (N.D. Cal. 1992).

The DHS Memo constitutes new information not available at the time of Defendant's detention hearing. Yet even assuming that Defendant meets the criteria set

forth in the Memo, the Court determines that the DHS Memo does not constitute new material evidence warranting pretrial release.

The government presented six reasons other than the ICE detainer as to why Defendant should not be granted pretrial release: (1) his limited family ties in the United States; (2) his lack of financial resources; (3) his substantial family ties in Pakistan; (4) the seriousness of the criminal charges against him and the potential lengthy sentence he faces if convicted; and (6) that the nature of Defendant's alleged crime – his alleged involvement in trafficking in counterfeit identification, fraudulent credit cards, and money laundering – provides the means to facilitate flight from the United States.

### 1. Nature and Circumstances of Offense Charged

Defendant is charged with violations of 18 U.S.C. § 1962 (Racketeering-RICO and RICO conspiracy) and 18 U.S.C. § 1029 (Fraud in connection with Access Devices). The amount lost is alleged to be in excess of $20 million. Mr. Mukhtar faces a possible sentence of twenty or more years in prison. The length of Mr. Mukhtar's potential sentence increases the risk that he will flee the United States because the possibility of a lengthy sentence incentivizes fleeing the country where a shorter potential sentence might not. *See United States v. Parodi*, CR-08-0083 PJH, 2008 WL 683421, at *2 (N.D. Cal. Mar. 7, 2008) (a "defendant's financial condition and the length of sentence he or she faces are of particular importance in assessing the risk of flight.").

### 2. Weight of Evidence Against Defendant

This factor "is the least important of the various factors." *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). Thus, "[a]lthough the [bail reform] statute permits the court to consider the nature of the offense and the evidence of guilt, the statute neither requires nor permits a pretrial determination that the person is guilty." *Id.* (citations omitted). "[I]f the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment." *Id.* Accordingly, factor two "may be considered only in terms of the likelihood that the

///

person will fail to appear or will pose a danger to any person or to the community." *Id.* (citing 18 U.S.C. § 3142(g) (remaining citation omitted)).

Defendant argues that the government's case against Mr. Mukhtar is weak because it is "predicated almost entirely upon circumstantial evidence," and "there is no allegation that" he "interacted with, or even knows, any of his co-defendants." (Dkt. no. 202 at 11.) The government, however, argues that the evidence supporting its allegations against Mukhtar is "overwhelming." (Dkt. no. 215 at 3.) For example, sixty of Mr. Mukhtar's fingerprints were found on credit cards acquired by an undercover agent in connection with the Carder.su investigation. Moreover, transaction proceeds were sent to a Pakistani bank account under the name of "Saquib Mukhtar." The government claims that this may be a fake account meant to hide Defendant's assets made through his Carder.su dealings, because the account is in the "exact same last name" as Defendant's and "a close anagram of his first name." (Dkt. no. 215 at 10.)

The evidence presented against Mr. Mukhtar weighs against pretrial release. Although the evidence may be wholly circumstantial, "under some conditions circumstantial evidence may be equally or more reliable than direct evidence[.]" *United States v. Nelson*, 419 F.2d 1237, 1240 (9th Cir. 1969). Defendant does not explain why the substantial circumstantial evidence presented against him in this case is unreliable or otherwise problematic.

For these reasons, factor two weighs against pretrial release.

### 3. History and Characteristics of Defendant

Under 18 U.S.C. § 3142(g), courts may consider "the history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, [and] record concerning appearance at court proceedings." *Motamedi*, 767 F.2d at 1407.

While alienage and immigration status may be considered by a court under the Act, alienage alone "does not point conclusively" to a determination that a Defendant is a

flight risk. *See Motamedi*, 767 F.2d at 1408. "When assessing an alien defendant's ties to the United States, factors to be considered include how long the defendant has resided in this country, whether defendant has been employed in the United States, whether defendant owns any property in this country, and whether defendant has any relatives who are United States residents or citizens." *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990).

Defendant argues that it would be "unwarranted and unreasonable" to make a determination regarding pretrial release based on Mr. Mukhtar's immigration status. (Dkt. no. 202 at 2.) This is correct. Mr. Mukhtar's immigration status is of little consequence, and in fact may weigh in his favor. Mr. Mukhtar has continuously lived in the United States since he was fifteen years old, has never returned to Pakistan, and is married to a United States citizen. In fact, Mr. Mukhtar's immigration status, when taken in isolation, suggests that he would have continued to remain in the United States illegally but for the proceedings in this case.

However, several of Mr. Mukhtar's other characteristics demonstrate that he is a flight risk. As mentioned, his parents and five of his six brothers reside in Pakistan. A "large amount" of the proceeds of Mukhtar's alleged sales were wired to Pakistan, many to an individual named Saquib Mukhtar, an account the government plausibly argues is a fake meant to hide Defendant's Carder.su assets in Pakistan. Even if it is not, Defendant's close familial ties to Pakistan make it likely that he would have sufficient financial support to maintain a living there.

Steady employment and financial resources demonstrate a tie to one's community, and weigh in favor of pretrial release. *See United States v. Honeyman*, 470 F.2d 473, 475 (9th Cir. 1972) (finding that the accused's steady employment and substantial financial resources, including real property, weighed in favor of pretrial release). Mr. Mukhtar is not currently employed nor does he have financial resources in the United States. He informed Pretrial Services that he has been unemployed for six months and has no significant assets but does have some credit card debt. Although

Ms. Mehjabeen testified that her husband has been a self-employed owner of a retail food business that she and he purchased in mid-2011 (though later sold), and that the pair were working towards opening another restaurant before he was arrested in early 2012, Defendant's Financial Affidavit and statement to Pretrial Services contradict Ms. Mehjabeen's testimony. In both, Mr. Mukhtar stated that had no assets available to him, not even an automobile, except for a small amount of cash. (Dkt. no. 110.) Although in his Appeal Defendant continues to state that he "has actively run his own business" (dkt. no. 202 at 12), Defendant has not presented Pretrial Services with documentation supporting these employment claims.

While Defendant's marriage shows marital ties to the United States, he also has at least equal, if not stronger, family ties to Pakistan. Such family ties to Pakistan coupled with his lack of financial and employment ties in the United States make factor three weigh against his release.

### 4. Nature and Seriousness of Danger to any Person or the Community that would be Posed by Defendant's Release

At the April 9, 2012, detention hearing, the Court determined that Mr. Mukhtar does not pose a danger to the community. This factor therefore weighs in favor of pretrial release.

### 5. Weighing the Bail Reform Act Factors

The Bail Reform Act factors, 18 U.S.C. § 3142(g), favor affirming the Magistrate Judge's Order. Although Mr. Mukhtar does not pose a danger to the community and his immigration and marital statuses favor release, the other factors cited by the government tip the scales against bail. As mentioned, the weight of the evidence against Mr. Mukhtar favors pretrial detention. Further, Mr. Mukhtar has significant ties to Pakistan and there is evidence that he may be concealing funds there. The nature of his alleged crime, credit card fraud via the Internet, demonstrates that he may have the means and ability to successfully flea the United States. Finally, the potential length of Mr. Mukhtar's sentence if he is found guilty – over twenty years in prison – incentivize flight,

especially for someone who can successfully seek refuge abroad. For these reasons, the Magistrate Judge's Order is affirmed in regards to the Magistrate Judge's decision regarding pretrial release under the Bail Reform Act.

**C. Due Process**

Defendant also appeals the Magistrate Judge's determination that detaining Mr. Mukhtar until February 2013, the expected date of his trial, does not violate his constitutional right to due process.

In *United States v. Salerno*, 481 U.S. 739, 746-47 (1987), the Supreme Court upheld the constitutionality of the Bail Reform Act against a substantive due process challenge. While the Court stated that the maximum length of pretrial detention is limited by the Speedy Trial Act, it "intimate[d] no view as to the point at which detention in a particular case might become excessively prolonged, [and] therefore punitive . . .." *Id.* at 747, n.4.

"[M]ost courts, when responding to due process motions of this kind, have tended to focus principally on three factors: (1) the non-speculative length of expected confinement; (2) the extent to which the government (the prosecution and/or the court system) bears responsibility for pretrial delay; and (3) the strength of the evidence indicating a risk of flight, a threat to the trial process, and/or a danger to the community." *United States v. Ailemen*, 165 F.R.D. 571, 581 (N.D. Cal. 1996) (citing *United States v. Millan*, 4 F.3d 1038, 1038 (2d Cir. 1993); *United States v. Melendez–Carrion II*, 820 F.2d 56, 59 (2d Cir. 1987); *United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986); *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986); *United States v. Gallo*, 653 F. Supp. 320, 338 (E.D.N.Y. 1986)). *Ailemen* summarized the "pertinent authorities" on due process challenges to pretrial release determinations, and found a pattern:

> It appears that the cases fall into three groups, which are separated from one another primarily (but not precisely) by the length of the expected pretrial detention. In the first group, the length of detention already served, or of non-speculative expected detention, is relatively short, between about six months and a year. In this setting, many courts refuse even to entertain

> due process challenges, concluding that the issue is not ripe. Generally, these courts announce this position without conducting a full analysis of the three main factors used in the balancing approach.
>
> By contrast, when expected detention is of medium length, between just under a year and about two years, courts usually examine, in some detail, all three of the main factors in the balancing approach. In this group of opinions, however, there appears to be some (soft) correlation between the findings about the presence or absence of unnecessary delay that is chargeable to the government and the outcomes of the due process analyses. In many (but not all) of the cases that fall into this middle group, the courts seem inclined to find a violation of the due process clause if they find that the government was responsible for substantial delay, but when the courts find that the government is not chargeable with any significant portion of the delay they are less likely to grant the defendant's motion.
>
> The third and final group . . . consists of cases where the expected pretrial detention is very long, more than two years. In this category, the courts, with one notable exception, have upheld the defendant's detention only if the government did not bear responsibility for any significant portion of the delay *and* there were special circumstances indicating that the risk of harm to the government's interests (preventing flight, danger to the community, or threat to the judicial process) was extraordinarily acute.

165 F.R.D. at 582-83.

Defendant argues that the Magistrate Judge incorrectly determined that because Mr. Mukhtar's pretrial detention period will be approximately one year, the due process claim is not ripe for review. Defendant asserts that because the trial in this case "may well be moved" to a later date because of the case's complexity, Mr. Mukhtar's Fifth Amendment right to due process will be violated were the Court to affirm the Magistrate's Order. (Dkt. no. 202 at 22-23.)

Defendant incorrectly states that the Magistrate Judge rejected Mr. Mukhtar's due process claim solely on the grounds of ripeness. The Order reads as follows:

> Because Mr. Mukhtar'[s] expected pretrial detention will be approximately one year, the due process issue is arguably not ripe for review. *To the extent it is ripe, however,* the Court finds that Defendant's pretrial detention does not violate due process at this point.

(Dkt. no. 184 at 16) (emphasis added.) In fact, the likely length of Mr. Mukhtar's detention falls in between the "short" and "medium" lengths discussed in *Aileman*. 165 F.R.D. at 582. The Magistrate Judge accordingly analyzed Mr. Mukhtar's claim under both the standards, and determined that because (1) Defendant poses a flight risk and

(2) there is no evidence of the government unnecessarily delaying the case, pretrial detention does not violate Mr. Mukhtar's right to due process. (Dkt. no. 184 at 16.) The Magistrate Judge did, however, determine that "[i]n the event trial is continued for a significant period of time," Mr. Mukhtar "may have grounds to renew his motion for pretrial release based on his constitutional right of substantive due process." (*Id.* at 17.)

The Court affirms the Magistrate Judge's decision on this claim. Pretrial detention does not violate Mr. Mukhtar's due process rights. Assuming *arguendo* that Mr. Mukhtar's length of detention falls into the "medium" *Ailemen* category, the length of detention is reasonable here. All parties agree that this is a complex case. That is the only proffered reason why Mr. Mukhtar's trial cannot be held until February 2013. There is no evidence that the February trial date is the result of unnecessary delay on the part of the government. Coupled with the fact that Defendant poses a flight risk, detaining Mr. Mukhtar before trial does not violate his right to substantive due process. However, the Magistrate Judge was also correct in determining that Mr. Mukhtar's due process rights may be compromised if the trial is continued beyond February 2012. In light of this, the Court urges the parties to conduct discovery in a speedy fashion, as it is unlikely that requests for continuances will be granted.

**IV.    CONCLUSION**

IT IS THEREFORE ORDERED that Defendant's Motion (dkt. no. 202) is DENIED.

Dated this 28th day of September 2012.

UNITED STATES DISTRICT JUDGE